**Jocelyn Y. DIAZ, Plaintiff–Appellant,**

v.

**The FIRST MARBLEHEAD CORPORATION, National Collegiate Trust, Pennsylvania Higher Education Assistance Agency, Inc., d.b.a. American Educations Services ("AES"), Defendants–Appellees.**

No. 14–15797
**Non–Argument Calendar.**

United States Court of Appeals,
Eleventh Circuit.

Feb. 25, 2016.

N. James Turner, N. James Turner, LLC, Orlando, FL, for Plaintiff–Appellant.

Aaron Gavin McLeod, Adams & Reese, LLP, Birmingham, AL, Louis M. Ursini, III, Adams & Reese, LLP, Tampa, FL, for Defendants–Appellees.

Before HULL, MARCUS, and JULIE CARNES, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant Jocelyn Y. Diaz ("Diaz") appeals the district court's imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure and its order to pay attorney's fees under 15 U.S.C. § 1692k(a)(3), which is the fee-shifting provision of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692–1692o.

## I. BACKGROUND

Defendant–Appellee Pennsylvania Higher Education Assistance Agency, Inc., doing business as American Educations Services ("AES"), is a loan servicer based in Harrisburg, Pennsylvania. AES is the servicer of two student loans that Diaz took out in 2006 and 2007. Payments on one of the loans became due in December of 2011, and Diaz began making the monthly loan payments to AES. After Diaz began failing to make the required loan payments, she allegedly received daily phone calls from AES, from August 2012 to January 2013. In July and August of 2014, Diaz and AES exchanged letters after Diaz questioned the amount of the debt AES told her she owed. Frustrated in her dealings with AES, Diaz retained counsel, N. James Turner ("Turner"), and filed suit against AES, alleging that AES used "false, deceptive, or misleading representation[s]" in the course of its communications with Diaz and engaged in "conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."[1] *See* 15 U.S.C. §§ 1692d-f.

AES filed a motion to dismiss. In that motion, it cited Diaz's acknowledgement in her complaint that AES is the servicer of her loans. Given that concession, AES argued that it "must be dismissed from this action with prejudice as [Diaz] has not and cannot allege any ultimate facts which would support a claim under the FDCPA because AES, as servicer, is not subject to the FDCPA. A loan servicer, AES noted, is not a "debt collector" under 15 U.S.C. § 1692a(6), which the statute defines as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." A "debt

---

1. The original complaint included two other parties as defendants, The First Marblehead Corporation and the National Collegiate Trust, both of which were involved in acquiring Diaz's loans from the original lenders and securitizing them. The amended complaint removed those parties.

collector" cannot be "any person collecting or attempting to collect a debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii).

In addition to quoting the clear language of the statute, AES pointed out that other circuits, as well as district courts, have held that creditors and loan servicers are not "debt collectors" for purposes of the FDCPA if they acquired or began servicing a loan prior to the debtor defaulting. *See, e.g., Carter v. AMC, LLC*, 645 F.3d 840, 843 (7th Cir.2011); *Rowe v. Educ. Credit Mgmt. Corp.*, 559 F.3d 1028, 1031 (9th Cir.2009); *Brumberger v. Sallie Mae Servicing Corp.*, 84 Fed.Appx. 458 (5th Cir.2004); *Aubert v. Am. Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir.1998); *Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir.1996); *Freeman v. Great Lakes Educ. Loan Servs.*, No. 3:12–cv–331, 2013 WL 2355541, at *6 (N.D.Fla. May 28, 2013); *Monroe v. CitiMortgage, Inc.*, No. 8:07–cv–0066, 2007 WL 1560194, at *2 (M.D.Fla. May 29, 2007); *Mondonedo v. Sallie Mae, Inc.*, No. 07–4059, 2009 WL 801784, at *5 (D.Kan. Mar. 25, 2009); *Ramirez–Alvarez v. Aurora Loan Servs., LLC*, No. 1:09–cv–1306, 2010 WL 2934473, at *5 (E.D.Va. July 21, 2010); *see also* S. REP. No. 95–382, 3–4 (1977) ("[T]he committee does not intend the definition to cover ... mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default when taken for servicing ...")

After the filing of this motion, Diaz moved to voluntarily dismiss her case, and the district court granted her motion. AES then moved for attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3), which is the attorney's fees provision of the FDCPA that permits a court to shift the defen-

dant's attorney's fees to the plaintiff "[o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment ..." The magistrate judge recommended that AES's fees request be granted, noting that, just as with this case, Turner had recently brought suit for a different client on this same type of claim, only to voluntarily dismiss the action once the defendant moved for dismissal on the same ground asserted by AES here: that it was a loan servicer who began servicing the debt prior to the debtor's default, and therefore was not a debt collector under the FDCPA.

> Based on his experience in the Soto case [*Soto v. Citimortgage, Inc.*, 6:14–cv–263–DAB], Mr. Turner knows loan servicers are not debt collectors for purposes of the FDCPA. This leads me to conclude that he knew his client's claim was frivolous and still chose to pursue it. This is sufficient in my view to show that the claim against AES was filed in bad faith and for purposes of harassment, or for some other improper purpose.

The magistrate judge recommended the assessment of attorney's fees against Diaz herself, citing "[t]he general rule ... that clients are responsible for the acts and omissions of the attorneys they select to represent them." As for Turner, the magistrate judge recommended that the district court impose Rule 11 sanctions against him, citing his apparent bad faith in drafting and signing a complaint with the knowledge that it was premised on a frivolous and meritless legal theory.

In her objections to the magistrate judge's report and recommendation ("R & R"), Diaz argued that, although this Circuit has not interpreted the "in bad faith and for the purposes of harassment" requirement of § 1692k(a)(3), "other courts have set a high bar, requiring the movant

point to evidence that a plaintiff both knew that his or her claim was meritless and pursued it with the purpose of harassing the defendant." Diaz argued that negligence, which is the most that could be fairly imputed in this case, is insufficient for bad faith. She noted that in other contexts, this Circuit has stated that "[a] determination of bad faith is warranted where an attorney knowingly or recklessly pursues a frivolous claim or engages in litigation tactics that needlessly obstruct the litigation of non-frivolous claims." *Schwartz v. Millon Air, Inc.,* 341 F.3d 1220, 1225 (11th Cir.2003) (discussing 28 U.S.C. § 1927). Diaz contended that this litigation did not rise to that level of recklessness. Diaz further argued that, even if Turner had acted in bad faith, that conduct should not be imputed to her.

After considering Diaz's objections to the magistrate judge's R & R, the district court adopted its findings and ordered that Diaz pay AES's attorney's fees in the requested amount of $5,068.00. Following the recommendation of the magistrate judge, the district court also ordered that Turner show cause why he should not be sanctioned under Rule 11.

Turner responded to the show cause order with the argument that the complaint was not frivolous because, even though other courts have held loan servicers not to be debt collectors under similar facts, the Eleventh Circuit has not yet done so. The absence of controlling precedent on the issue, Turner argued, meant the claim could not be frivolous. Unconvinced by Turner's argument, the district court imposed sanctions on Turner in the amount of $5,068.00. The district court then issued an amended order, making clear that there was only one judgment—for $5,068.00—and that Diaz and Turner were jointly and severally liable for it.

Diaz and Turner appealed to this Court, arguing that both the fee-shifting under § 1692k(a)(3) and the Rule 11 sanctions were in error.

## II. Analysis

### A. Standard of Review

Sanctions under Rule 11 are reviewed for abuse of discretion. *Nicholson v. Shafe,* 558 F.3d 1266, 1270 (11th Cir.2009); *Amlong & Amlong, P.A. v. Denny's, Inc.,* 500 F.3d 1230, 1237–38 (11th Cir.2007). The decision to grant or deny attorney fees is likewise reviewed for abuse of discretion. *Davis v. Nat'l Med. Enter., Inc.,* 253 F.3d 1314, 1318–19 (11th Cir.2001). This standard applies to attorney fees awarded under 15 U.S.C. § 1692k(a)(3). *Hollis v. Roberts,* 984 F.2d 1159, 1160–61 (11th Cir.1993) (applying abuse-of-discretion standard to § 1692k(a)(3)); *see also Marx v. Gen. Revenue Corp.,* —— U.S. ——, 133 S.Ct. 1166, 1175, 185 L.Ed.2d 242 (2013) ("It is undisputed that § 1692k(a)(3) leaves the background rules for attorney's fees intact.")

### B. Jurisdiction Over Turner's Appeal of the Rule 11 Sanctions

■ This Court faces an initial question of its jurisdiction over Turner's appeal of the Rule 11 sanctions the district court ordered against him. Neither the original nor the amended notice of appeal filed in the district court states that Turner intended to participate in this appeal as an appellant, rather than only as counsel to Diaz. This raises a possible problem, because generally, "no appellate jurisdiction exists over an appeal of a district court's award of sanctions against counsel where the notice of appeal fails to make clear that counsel intends to participate as an appellant rather than as an appellant's attorney." *Bogle v. Orange Cty. Bd. of Cty. Comm'rs,* 162 F.3d 653, 660–61 (11th Cir.

1998). However, we have held that where "the award of fees was joint and several against the [client] and its counsel ... it would be unjust to refuse to hear counsel's appeal" simply because the attorney did not file the notice of appeal in his name as well as the client's. *Corp. of the Presiding Bishop of the Church of Jesus Christ of Latter–Day Saints v. Associated Contractors, Inc.*, 877 F.2d 938, 939 n. 1 (11th Cir.1989); *see also Holloman v. Mail–Well Corp.*, 443 F.3d 832, 844–45 (11th Cir.2006) (reconciling *Corp. of the Presiding Bishop* and *Bogle* on the grounds that the former involved "sanctions on the plaintiff and the attorney jointly and severally, and the notice of appeal specifically stated that the sanctions were the subject of the appeal," whereas the latter involved "sanctions imposed only against the attorney ... [and] the notice of appeal only listed the client as an appellant.")

Here, because the district court imposed the § 1692k(a)(3) attorney's fees against Diaz and Rule 11 sanctions against Turner jointly and severally in a single judgment, and the notice of appeal cites that judgment as a whole, we believe that *Corp. of the Presiding Bishop* controls, and therefore the issue of the Rule 11 sanctions against Turner is properly before the Court. Moreover, because the civil appeal statement filed in this Court prior to briefing made clear that the Rule 11 sanctions were an issue on the appeal, there is no surprise or undue prejudice to AES in permitting Turner to appeal as a participant, rather than only as an attorney. We therefore hold that jurisdiction over Turner's appeal of the Rule 11 sanctions is proper.

## C. Rule 11 Sanctions Assessed against Turner

█ The goal of Rule 11 sanctions is to "reduce frivolous claims, defenses, or motions, and to deter costly meritless maneuvers." *Massengale v. Ray*, 267 F.3d 1298, 1302 (11th Cir.2001). Sanctions are appropriate

(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; or (3) when the party files a pleading in bad faith for an improper purpose.

*Id.* at 1301 (internal quotations and citations omitted). The standard for gauging whether a claim is frivolous or meritless is an objective one, "[h]ence courts determine whether a reasonable attorney in like circumstances could believe his actions were factually and legally justified." *Kaplan v. DaimlerChrysler, A.G.*, 331 F.3d 1251, 1255 (11th Cir.2003) (citing *Donaldson v. Clark*, 819 F.2d 1551, 1556 (11th Cir.1987); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1294 (11th Cir.2002)). A two-step inquiry is involved in the decision to impose Rule 11 sanctions, with the court asking "(1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware that they were frivolous." *Baker v. Alderman*, 158 F.3d 516, 524 (11th Cir.1998). "[I]f, after dismissing a party's claim as baseless, the court finds that the party's attorney failed to conduct a reasonable inquiry into the matter, then the court is obligated to impose sanctions even if the attorney had a good faith belief that the claim was sound." *Byrne v. Nezhat*, 261 F.3d 1075, 1105–1106 (11th Cir. 2001), *abrogated on other grounds by Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir.2011).

The magistrate judge's report and recommendation, adopted by the district court, gave as reasons for imposition of

Rule 11 sanctions the fact that Turner had pursued, and then abandoned, a similar theory in the earlier *Soto* case. The R & R concluded that through his litigation of that earlier case, Turner had necessarily been made aware, through the defendant's motion to dismiss, that the text of § 1692a(6) does not support the extension of liability to a loan servicer. Further, even though our Circuit has not addressed the question, the jurisprudence of other circuits has so held. Accordingly, Turner knew or should have known that the legal basis for Diaz's claim against AES was meritless.

We affirm the district court, but cautiously. We emphasize that the fact that other circuits have interpreted the law a particular way does not determine how this Circuit will interpret the law. Further, to predetermine how we might interpret the law by imposing sanctions based solely on other circuits' holdings could, in some circumstances, undermine the orderly workings of our judicial system. Thus, the fact that other courts have rejected the argument that loan servicers are debt collectors under these general circumstances is not sufficient, by itself, to mandate a conclusion that Diaz's claims were objectively frivolous.

Yet, here a simple reading of the statute underlying Diaz's claim reveals that the amended complaint employed an objectively frivolous legal theory. Specifically, Diaz's likelihood of success depended on her assertion that AES was a debt collector. Yet, Diaz's factual assertion regarding AES's relationship to the loan makes it clear to anyone who has read the statute that AES was not a debt collector, as the statute defines that term. That is,

§ 1692a(6) excludes from "debt collector" "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F). From the facts alleged in the amended complaint, the debt was clearly not in default at the time AES began servicing it; thus, AES could not be a "debt collector."

According to the amended complaint, Diaz took out two student loans, one on April 27, 2006, and the other on June 4, 2007. These were soon acquired by The First Marblehead Corporation, which securitized the loans into trusts under Delaware law. AES became the servicer of the loans, and remained the servicer through several changes in ownership of the loans. According to the amended complaint, the most recent purchase of the loans was apparently made by VCG Owners Trust ("VCG"), on March 31, 2009.[2] Thus, from the time that The First Marblehead Corporation acquired the loans, AES was the loan servicer. AES was still the servicer when payments became due on the first loan and Diaz began making those payments:

34. Defendant, AES, is the servicer of the two student loan [sic] referred to above and alleged to be owed by Plaintiff.

35. Beginning on December of 2011, Plaintiff began making regular monthly payments to Defendant on one of the two loans referred to above.

It was after AES began servicing the loans, and after Diaz began making payments on the loans, that Diaz began expe-

---

**2.** This is the last party that Diaz alleges to have acquired the loans, but as part of her claim she seems to allege that it is uncertain who in fact owns the loans. In any case, Diaz alleges no change of ownership of the loans during the period of her interactions with AES.

riencing difficulty meeting the loan obligations:

36. From August of 2012 through December of 2012, Plaintiff was unemployed and was having difficulty in making payments on the two student loans referred to above.

37. Beginning on January of 2013, Plaintiff resumed payments to Defendant on the two student loans referred to above.

38. Beginning on August of 2012 and continuing through January of 2013, Defendant, AES, called Plaintiff on a daily basis in an attempt to collect a debt.

39. Defendant failed to offer Plaintiff any repayment options causing Plaintiff to infer, as the least sophisticated consumer, that Defendant was encouraging Plaintiff to default on her loans.

Based on the pleadings, it is therefore clear that Diaz only began to fall behind in her loan payments after AES had begun servicing those loans. Thus, because the loans were not in default at the time that AES began servicing them and applying the plain text of § 1692a(6)(F), AES cannot qualify as a debt collector.

Turner does not disagree that his claim against AES could not succeed. He merely argues that he was not necessarily on notice of that fact. Yet, we conclude that because under the statute and the facts pleaded in the amended complaint, AES very obviously could not be held liable as a debt collector under § 1692a(6), Turner lacked any good and legitimate reason to file Diaz's complaint against AES. It was thus "objectively frivolous." *See Baker*, 158 F.3d at 524. Shoring up the inference that Turner was necessarily aware of the frivolity of his claim is the fact that Turner had been through nearly identical litigation in *Soto*, and in the course of that had been notified via the defendant's motion to dismiss that § 1692a(6) does not apply to a loan servicer. Indeed, Turner was apparently so persuaded by the reasoning of the defendant's motion to dismiss that he voluntarily dismissed Soto's claim. In addition, Turner amended the original complaint, removing the other parties that had been named as defendants. This deletion of originally-named parties suggests that Turner put some consideration into the question of who, exactly, the proper defendant should be under the FDCPA.

For the above reasons, we affirm the district court's imposition of Rule 11 sanctions against Turner.[3] Under a plain read-

---

3. In his reply brief, Turner introduces a new argument, in support of his opposition to Rule 11 Sanctions: that a higher standard applies when a judge *sua sponte* considers imposition of Rule 11 sanctions. *See Kaplan*, 331 F.3d at 1255 (applying an "akin to contempt" standard for *sua sponte* Rule 11 sanctions). Turner does not, however, spell out with any clarity why sanctions would not be appropriate under this higher standard. More importantly, he never raised this argument below nor articulated it in his opening brief. Accordingly, we deem this newly advanced argument to be waived. *United States v. Whitesell*, 314 F.3d 1251, 1256 (11th Cir.2002) (Court will not address arguments made for first time in reply brief), *cert. denied*, 539 U.S. 951, 123 S.Ct. 2628, 156 L.Ed.2d 643 (2003);

*see also Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1319 n. 9 (11th Cir.2001) (party's initial brief did not adequately argue that sanctions under Rule 11 or 28 U.S.C. § 1927 were appropriate, and party's reply brief only addressed Rule 11, so it "has waived an appellate challenge to the denial of sanctions under 28 U.S.C. § 1927 ...") This is not one of those rare cases where some intervening Supreme Court decision has made available to the appellant an argument that could not have been made at the time that the initial brief was written. *See Joseph v. United States*, —— U.S. ——, 135 S.Ct. 705, 705–706, 190 L.Ed.2d 461 (2014) (concurring statement of Kagan, J., joined by Ginsberg and Breyer, JJ.). Rather, this is a "usual case" for which

ing of § 1692a(6), AES cannot be a debt collector for FDCPA purposes, and thus it was not unreasonable for the district court to conclude that the claim was meritless and frivolous. Further, the district court reached a reasonable conclusion in finding that Turner was aware of this, given his litigation experience in the *Soto* case. The jurisprudence of other circuit courts confirming the meritlessness of the claim fortifies this conclusion. It was therefore not an abuse of discretion for the district court to sanction Turner for filing a bad faith, frivolous suit.

### D. Attorney's Fees Assessed Against Diaz

Under 15 U.S.C. § 1692k(a)(3),[4] the district court may award attorney's fees to a defendant in an FDCPA case if it finds that the plaintiff brought the action in bad faith and to harass the defendant. Relying on the same evidence of bad faith that supported the imposition of Rule 11 sanctions against Diaz's attorney, N. James Turner, the magistrate judge recommended that the district court similarly make Diaz liable for AES's attorney's fees. The magistrate judge concluded that § 1692k(a)(3) authorized imposition of these fees on Diaz.

> This statutory provision provides that:
>
> (3) in the case of any successful action to enforce the foregoing [FDCPA] liability ... [o]n a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs.

15 U.S.C. § 1692k(a)(3). Although there was no evidence that Diaz, herself, had acted in bad faith or for the purpose of harassment when she brought the lawsuit, the magistrate judge relied on the "general rule ... that clients are responsible for the acts and omissions of the attorneys they select to represent them." Given that principle and the fact that "Diaz has not asserted an advice of counsel defense or provided any reason why the general rule does not apply," the magistrate judge recommended that Diaz be held personally liable for AES's attorney's fees. Over Diaz's objections, the district court agreed and assessed the attorney's fees against Diaz personally.

■ We conclude that the district court erred in assessing attorney's fees against Diaz. Although we have no circuit precedent interpreting the meaning of "in bad faith and for the purposes of harassment" in the context of § 1692k(a)(3), we have previously held that Rule 11 sanctions could not be imposed on a plaintiff-client based solely on the misconduct of her attorney. *See Byrne*, 261 F.3d at 1121–23. In *Byrne*, a medical malpractice case, the district court had imposed sanctions—in the form of attorney's fees—against the plaintiff for bringing numerous baseless and frivolous claims, in addition to her one colorable claim, but we reversed because we found no basis for concluding that the plaintiff herself was responsible for larding the complaint with the meritless claims. *Id.* at 1121–23. While ample evidence indicated that counsel had acted with the necessary bad faith to support Rule 11

---

our practice of not considering an argument made for the first time in the reply brief "ensures that opposing parties will have notice of every issue in an appeal, and that neither they nor reviewing courts will incur needless costs from eleventh-hour changes of course." *Id.* at 705.

4. AES seemingly agrees that this statutory provision authorizes imposition of attorney's fees against only the plaintiff, herself, not against the attorney who represents the plaintiff.

sanctions, we found no evidence that the plaintiff "knew that a baseless claim had been brought on her behalf or that she was pursuing the [defendants] for a harassing or other impermissible purpose." *Id.* at 1124. And to justify a sanction that requires a showing of bad faith or improper purpose, we concluded that the district court "should make specific findings as to the party's conduct that warrants sanctions." *Id.* at 1123. Diaz urges that the same is true here, arguing that none of the magistrate's findings relating to bad faith on Turner's part are imputable to Diaz.

In support of the district court's action in assessing fees against Diaz personally, AES argues that "Diaz here did more than merely hire Mr. Turner to represent her regarding her student loans. Diaz filed a *Verified* Amended Complaint against AES, in which she swore the matters therein 'are true and correct.'" It is true that Diaz swore to the truth of the factual allegations in the amended complaint, and if the sanctionable conduct found by the district court had consisted of mendacious statements of fact attributable to the plaintiff, AES would have a strong point. But the court's basis for sanctioning Turner was not of that nature. Instead, as set out at length above, Turner was sanctioned because the clear text of the statute on which he based the claim did not permit the claim, under the facts at issue. Moreover, Turner should have been well aware of that fact because he had previously brought the same sort of claim, only to have to dismiss it when the defendant in that case noted the same flaw.[5] No knowledge of this may reasonably be imputed to

Diaz herself, absent some evidence that she had knowledge of the legal strategy being pursued and its faults, rather than just the facts of her case. Because neither the magistrate judge's R & R nor the district court's order find complicity by Diaz in devising or going along with the frivolous legal strategy, we hold that it was an abuse of discretion to impose AES's attorney's fees against Diaz under § 1692k(a)(3).

## III. CONCLUSION

For the above reasons, we **AFFIRM** that part of the district court's order requiring that Turner pay Defendant's attorney's fees pursuant to Rule 11, but **REVERSE** that part of its order holding Diaz jointly liable for those same fees pursuant to § 1692k(a)(3). Because the district court's amended order imposed a single judgment of $5,068.00, for which Turner and Diaz were jointly and severally liable, we remand for the court to amend that order to make Turner solely liable for the judgment.

---

5. On appeal, AES argues that the amended complaint does contain some dishonest factual statements about Diaz's communications with AES. However, those were not the basis for the sanctions, and as we noted in *Byrne,* "false statements alone do not indicate bad faith." 261 F.3d at 1125. Even taken as true, AES's allegations do not amount to a "smoking gun" of bad faith on Diaz's part. *See id.* ("A false statement can be evidence of bad faith, if, for instance, there is other evidence in the record indicating that the statement was made for a harassing or frivolous purpose.")